Mia Farber (SBN 131467)
*Mia.Farber@jacksonlewis.com*
Nicky Jatana (SBN 197682)
*Nicky.Jatana@jacksonlewis.com*
Buck N. Haddix (SBN 295334)
*Buck.Haddix@jacksonlewis.com*
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5408
Telephone:  (213) 689-0404
Facsimile:   (213) 689-0430

Attorneys for Defendant
MCKESSON MEDICAL-SURGICAL INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

EDELMIRA MALDONADO, individually and on behalf of other persons similarly situated,

                    Plaintiffs,

          v.

MCKESSON MEDICAL-SURGICAL INC., a Virginia corporation; and DOES 1 through 10,

                    Defendants.

CASE NO.:

**DEFENDANT MCKESSON MEDICAL-SURGICAL INC.'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**

(Filed concurrently with Civil Case Cover Sheet; Declarations of Mallory Kiefer and Buck N. Haddix; Corporate Disclosure Statement; and Notice of Interested Parties)

///
///
///
///
///
///
///

1

**TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF EDELMIRA MALDONADO, AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant MCKESSON MEDICAL-SURGICAL INC. ("Defendant" or "McKesson Medical-Surgical") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, and removes the above-entitled action from the Superior Court of the State of California for the County of San Bernardino based on the Class Action Fairness Act of 2005 ("CAFA"). McKesson Medical-Surgical submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff EDELMIRA MALDONADO ("Plaintiff") and without conceding Plaintiff has pled claims upon which relief can be granted. This removal is based on the following grounds:

## SERVICE AND PLEADINGS FILED IN STATE COURT

1. On July 22, 2022, Plaintiff filed an unverified Class Action Complaint against McKesson Medical-Surgical in the Superior Court of the State of California for the County of San Bernardino entitled *EDELMIRA MALDONADO, individually and on behalf of other persons similarly situated, Plaintiffs, v. MCKESSON MEDICAL-SURGICAL INC., a Virginia corporation; and DOES 1 through 10, Defendants*, Case No. CIV SB 2215953, which sets forth the following eight (8) causes of action: (1) failure to provide meal periods; (2) failure to provide paid rest periods; (3) failure to pay wages; (4) failure to timely pay wages at termination/separation; (5) failure to timely pay vacation wages at termination; (6) failure to provide accurate wage statements; (7) failure to reimburse business expenses; and (8) unfair competition (the "Complaint"). As stated in paragraph 27 therein, the Complaint is brought as a class action on behalf of "[a]ll of Defendant's current and former non-exempt employees who worked for Defendant in California and who were California residents, during the four years before the filing of the Complaint through the time of class certification."

2. On September 8, 2022, Plaintiff filed the Summons.

3.      On September 9, 2022, Judge David Cohn of the Superior Court of California, County of San Bernardino, issued an Initial Case Management Order which the Court Clerk served on Plaintiff's counsel.  Declaration of Buck N. Haddix ("Haddix Decl.") at ¶ 3.  True and correct copies of the Initial Case Management Order and the Clerk's Certificate of Service are attached to the Haddix Declaration as **Exhibit "A**."

4.      McKesson Medical-Surgical first received Plaintiff's Summons, Complaint and Civil Case Cover Sheet when it was served on October 28, 2022.  Haddix Decl. at ¶ 4.  True and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and related court documents received by McKesson Medical-Surgical on October 28, 2022 are attached as **Exhibit "B"** to the Haddix Declaration.

5.      On November 22 and November 23, 2022, McKesson Medical-Surgical served and filed an Answer to the Complaint in San Bernardino County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses.  *Id*. at ¶ 5.  A true and correct copy of McKesson Medical-Surgical's Answer is attached as **Exhibit "C"** to the Haddix Declaration.

6.      As of today, **Exhibits "A," "B" and "C"** to the Haddix Declaration constitute all of the pleadings that have been filed or served in this action, and no further proceedings have occurred in the state court.  *Id.* at ¶ 6.

## TIMELINESS OF REMOVAL

7.      This Notice of Removal has been filed within thirty (30) days after McKesson Medical-Surgical was first served with a copy of Plaintiff's Summons and Complaint on October 28, 2022.  *Id.* at ¶ 3.  Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b).  *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

///

///

1

## **VENUE IS PROPER.**

2      8.      This action was filed in the Superior Court in and for the County of San

3   Bernardino.  Thus, pursuant to 28 U.S.C. §§ 84(c)(2) and 1441(a), McKesson Medical-

4   Surgical is removing this action to the United States District Court for the Central District

5   of California as the district "embracing the place where [the] action is pending."

6   ## **REMOVAL IS PROPER BASED ON THE CLASS ACTION FAIRNESS ACT.**

7      9.      Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.*

8   Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

9   > The district courts shall have original jurisdiction of any civil
10  > action in which the matter in controversy exceeds the sum or
    > value of $5,000,000, exclusive of interest and costs, and is a
11  > class action in which – (A) any member of a class of plaintiffs
    > is a citizen of a State different from any defendant.

12     10.     In addition, CAFA provides for jurisdiction in the district courts only where

13  the proposed class involves 100 or more members, or where the primary defendants are

14  not States, State officials, or other governmental entities.  28 U.S.C. § 1332(d)(5).

15     11.     As set forth below, this is a civil action over which this Court has original

16  jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action

17  involving more than 100 members, the matter in controversy – based on the allegations in

18  the Complaint – exceeds the sum of $5,000,000, exclusive of interest and costs, and

19  Plaintiff is a citizen of a state different from Defendant.  *See* 28 U.S.C. §§ 1332(d) and

20  1453.  Furthermore, McKesson Medical-Surgical is not a State, State official, or other

21  governmental entity.

22  **A.      THE PUTATIVE CLASS CONTAINS MORE THAN 100 MEMBERS.**

23     12.     CAFA provides that the district courts shall not have jurisdiction over class

24  actions where "the number of members of all proposed plaintiff classes in the aggregate

25  is less than 100."  28 U.S.C. § 1332(d)(5).

26  ///

27  ///

28  ///

13.    Here, Plaintiff's Complaint asserts that the Putative Class consists of "more than 100 individuals."  Haddix Decl. at ¶ 4, **Exhibit "B"** ["Complaint"] at ¶ 29.[1]  Further, McKesson Medical-Surgical's records identify at least 1,080 individuals who have been employed by McKesson Medical-Surgical as non-exempt employees in the State of California between July 22, 2018 (four years prior to the filing of the Complaint) and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class"; the period between July 22, 2018 and the present is referred to herein as the "Putative Class Period").[2]  Declaration of Mallory Kiefer ("Kiefer Decl.") at ¶¶ 7, 8.[3]  Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.    THE NAMED DEFENDANT IS NOT A GOVERNMENT ENTITY.**

14.    McKesson Medical-Surgical is not a State, a State official, or any other governmental entity.  Kiefer Decl. at ¶ 3.

**C.    MINIMAL DIVERSITY IS SATISFIED UNDER CAFA.**

15.    The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c).  CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens.  28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant"); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original

---

[1]    McKesson Medical-Surgical denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief.  McKesson Medical-Surgical also denies that this action can proceed as a class action.  Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.
[2]    Although the Putative Class Period spans from July 22, 2018 to the present, all calculations used in this Notice of Removal are based on data for 1,080 Putative Class Members who worked for McKesson Medical-Surgical in California from July 22, 2018 to August 26, 2022.  *See* Kiefer Decl. ¶¶ 7, 8.

diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal").

16.    Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

17.    For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.,* No. CV 17-02871-BRO (SSx), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

18.    McKesson Medical-Surgical is informed and believes, as alleged by Plaintiff in the Complaint, that Plaintiff, at the time this action was commenced, and still is, a resident and citizen of the State of California. **Exhibit "B"** ["Complaint"] at ¶¶ 15, 16.

19.    For purposes of removal under CAFA, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c). With respect to ascertaining a corporation's principal place of

business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id*. A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state. *Id*.

20.    At the time Plaintiff filed the Complaint and presently, McKesson Medical-Surgical has been a corporation organized under the laws of the State of Virginia. Kiefer Decl. at ¶ 4. At all relevant times, the company headquarters of McKesson Medical-Surgical, and thus its principal place of business, has been in the State of Virginia. *Id*. McKesson Medical-Surgical's headquarters in Richmond, Virginia is where the majority of its executive, administrative, financial and management functions are conducted, and from where the majority of its high-level officers direct, control, coordinate and control the company's operations and activities. *Id.* at ¶ 5. Most of McKesson Medical-Surgical's executive officers maintain their offices in the State of Virginia. *Id*. Accordingly, for purposes of removal under CAFA, McKesson Medical-Surgical is a citizen of the State of Virginia and is not a citizen of the State of California.

21.    Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant was – and still is – a citizen of the State of Virginia.[4]  28 U.S.C. § 1332(d)(2).

///

///

///

---

[4]    The citizenship of the Doe defendants is immaterial for the purpose of determining whether CAFA's minimal diversity requirements are satisfied under CAFA. *See* 28 U.S.C. § 1441(a); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("under CAFA, complete diversity is not required; 'minimal diversity' suffices").

## D.     THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 BASED ON A PLAUSIBLE READING OF THE ALLEGATIONS OF THE COMPLAINT.

22.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d)(6).  Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly . . . .").

23.     In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co*., 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")).  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

24.     Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage

8

of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at \*15 (E.D. Cal. Apr. 30, 2007).  Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum.  *Jauregui v. Roadrunner Transp. Servs*., 28 F.4th 989, 993-94 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven"); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").  "[T]his rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (*citing Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 594-96 (2013)).  "The Supreme Court has held that when a class-action plaintiff stipulates, prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total, the district court should ignore that stipulation when assessing the amount in controversy.  This is so because although individual plaintiffs are the masters of their complaints and may stipulate to amounts at issue that fall below the federal jurisdictional requirement, the same is not true for a putative class representative, who cannot yet bind the absent class."  *Arias*, 936 F.3d at 928-29 (*citing Standard Fire Insurance Co.*, 568 U.S. at 595-96  (internal quotations and citations omitted)).

25.     In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold."

135 S. Ct. 547, 554 (2014) (emphasis added).  Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions," which need not be proven.  *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (citations and internal quotation marks omitted); *Arias*, 936 F.3d at 922, 925 (defendant may rely on reasonable assumptions in estimating amount in controversy, which "need not be proven").  Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'"  *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554.  On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal.  *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

26.    Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise.  *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *12 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint.");

*Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

27.    While Plaintiff does not allege a specific amount in damages, her Complaint was filed as an "unlimited" jurisdiction civil case on behalf of the Putative Class.  As such, Plaintiff is claiming the monetary damages and restitution she is seeking exceeds the $25,000 minimum jurisdiction limits of the California Superior Court,[5] which is confirmed by the fact that she designated her case as "Unlimited (Amount demanded exceeds $25,000)" on her Civil Case Cover Sheet.  Haddix Decl. at ¶ 4, **Exhibit "B"** [Civil Case Cover Sheet].  Plaintiff further contends that her claims "are typical of the claims of all members of the Class and Subclasses, who sustained similar damages arising out of Defendant's common course of conduct in violation of law as alleged."  Complaint at ¶ 29.  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking at least $25,000 [the unlimited jurisdictional amount] per Putative Class Member, which places over **$27,000,000** in controversy ($25,000 x 1,080 Putative Class Members).  Kiefer Decl. at ¶ 8; *see Abrego v. The Dow Chem. Co*., 443 F.3d 676, 689 (2006) (finding jurisdictional amount met where complaint sought no specific amount in damages but pled the amount in controversy to exceed $25,000 and there were 1,160 class members).

28.    In the alternative, and without admitting Plaintiff could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[6] also places an aggregate amount in controversy exceeding $5,000,000, exclusive of attorneys' fees, interest, and costs, as follows:

a.    First Cause of Action – Failure to Provide Meal Periods:  Plaintiff alleges that "Defendant had a consistent policy of requiring its employees, including Plaintiff, to work through meal periods or work without a meal period for at least five (5) hours of a shift and

---

[5]    *See* California Code of Civil Procedure §§ 86(a) and 88.
[6]    *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

failing to pay such employees one (1) hour of pay at the employees' regular rate of compensation for each workday that the meal period was not provided or as required by California state wage and hour laws." Complaint at ¶ 7. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one meal period premium per week per employee for all Putative Class Members, which would place over **$1,924,075.04** in controversy in

connection with her meal period claim, using the class time period and each putative class member's hourly pay rate.[7] Kiefer Decl. at ¶ 10.

b.    <u>Second Cause of Action – Failure to Provide Paid Rest Periods</u>: Plaintiff alleges that "Defendant had a consistent policy of failing to allow its employees, including Plaintiff, rest periods for at least ten (10) minutes per four (4) hours, or a major fraction worked, and failing to pay such employees one (1) hour of pay at their regular rate of compensation for each workday that the rest period was not provided, or other compensation, as required by California state and wage and hour laws." Complaint at ¶ 8. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one rest period premium per week per employee for all Putative Class Members, which would place over **$1,924,075.04** in controversy in connection with her rest period claim, using the class time period and each putative class member's hourly pay rate.[8] Kiefer Decl. at ¶ 11.

c.    <u>Third Cause of Action – Failure to Pay Wages</u>:  Plaintiff claims that "Defendant had a consistent policy of not paying wages for all hours worked, including overtime and double time wages as applicable, including failing to properly calculate an employee's regular rate of pay." Complaint at ¶ 6. Plaintiff further alleges that Defendant "fail[ed] to pay all wages . . . including minimum wages, [and] wrongfully

---

[7]    In the event Plaintiff was able to prove two noncompliant meal periods per week per employee for all Putative Class Members, the damages would total $3,848,150.08, using the class time period and each putative class member's hourly pay rate.  *See* Kiefer Decl. ¶ 10.

[8]    In the event Plaintiff was able to prove two noncompliant rest breaks per week per employee for all Putative Class Members, the damages would total $3,848,150.08, using the class time period and each putative class member's hourly pay rate.  *See* Kiefer Decl. ¶ 11.

classified off-the-clock wages and overtime pay." Complaint at ¶ 38. Given these purported violations, Plaintiff claims she and Putative Class Members are entitled to a recovery of "minimum and overtime wages for all hours worked and liquidated damages equal to unlawfully unpaid minimum wages with interest." Complaint at ¶ 37. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of overtime wages per week per employee for all Putative Class Members, which would place **$2,886,112.56** in controversy in connection with her overtime claim, using the class time period and each putative class member's hourly pay rate.[9] Kiefer Decl. at ¶ 9. Additionally, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of minimum wage per week for all Putative Class Members, which would place over **$983,236.10** in controversy in connection with her minimum wage claim ($11.00[10] minimum hourly wage rate x 1 hour per week x 89,385.10 workweeks plus an equal amount in liquidated damages). Kiefer Decl. at ¶ 8.[11]

       d.   <u>Fourth Cause of Action – Failure to Pay Wages Due at Termination</u>: Plaintiff derivatively asserts Defendant independently failed to timely pay the earned wages of Putative Class Members upon separation. Complaint at ¶¶ 10, 39-41. During the applicable three-year statute of limitations period (July 22, 2019 to the present), approximately 498 Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant. Kiefer Decl. at ¶ 13. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over **$2,120,043.76** in controversy in connection with her claim for waiting time penalties,

---

[9]    In the event Plaintiff is able to prove two hours of unpaid overtime wages per week per employee for all Putative Class Members, the damages would total $5,772,225.13, using the class time period and each putative class member's hourly pay rate. *See* Kiefer Decl. ¶ 9.

[10]    For purposes of calculating potential minimum wage damages in this Notice of Removal, McKesson Medical-Surgical conservatively utilized the lowest applicable minimum wage rate in effect during the Putative Class Period ($11.00 per hour). *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/iwc/minimumwagehistory.htm).

[11]    These amounts do not include potential damages for Plaintiff's claim for failure to timely pay wages pursuant to California Labor Code Section 210. Specifically, Plaintiff alleges that "any wages that were paid were not effectively paid within seven (7) days of the close of any applicable payroll period." Complaint at ¶ 38.

using each putative class member's daily rate for each day up to thirty days after their separation from employment.  *Id.*

e.  <u>Sixth Cause of Action – Failure to Provide Accurate Wage Statements</u>: Plaintiff asserts Defendant derivatively failed to provide Putative Class Members with accurate itemized wage statements for all wages in writing "showing the gross wages earned and/or paid, including premium wages owed for failing to provide meal and/or rest periods at the proper intervals."  Complaint at ¶¶ 24, 45-47.  Given these purported violations, Plaintiff claims she and Putative Class Members are entitled to statutory penalties under Labor Code section 226(e).  During the one-year statute of limitations period mandated under Labor Code section 226 (i.e., July 22, 2021 to the present), an employee suffering injury as a result of an employer's failure to provide accurate wage statements may recover the greater of (a) actual damages; or (b) fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each subsequent violation, not to exceed an aggregate penalty of four thousand dollars ($4,000).  Thus, based on the allegations in the Complaint and the putative class data, it is plausible that Plaintiff has placed over **$1,290,550** in controversy in connection with her wage statement claim.  Kiefer Decl. at ¶ 12; *see* Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members"); *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant").

29.     Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (**$11,128,092.50[12]**) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

30.     In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the San Bernardino County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## CONCLUSION

31.     Based on the foregoing, McKesson Medical-Surgical hereby removes the above-captioned action from the San Bernardino County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated:  November 23, 2022                    JACKSON LEWIS P.C.


                                    By:     */s/ Mia Farber*
                                            Mia Farber
                                            Nicky Jatana
                                            Buck N. Haddix

                                            Attorneys for Defendant
                                            MCKESSON MEDICAL-SURGICAL INC.

---

[12]     This amount does not include potential damages for Plaintiff's claim for failure to timely pay wages pursuant to California Labor Code Section 210, Plaintiff's fifth cause of action for failure to pay vacation wages due at termination, Plaintiff's seventh cause of action for failure to reimburse necessary expenses pursuant to California Labor Code Section 2802, nor attorneys' fees which Plaintiff seeks, which would further increase the amount in controversy in connection with Plaintiff's putative class claims.